IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DARYL A. ROYSTER,
    Plaintiff,

vs.                                      Case No. 3:06cv565/MCR/EMT

STATE OF FLORIDA, et al.,
    Defendants.
_____/

## ORDER, REPORT AND RECOMMENDATION

Plaintiff, proceeding pro se, has filed a civil rights complaint under 28 U.S.C. § 1331 and 42 U.S.C. § 1983 (Doc. 1). He has also filed a motion to proceed in forma pauperis (Doc. 2). Leave to proceed in forma pauperis will be granted for the purpose of dismissal of this action.

In the instant complaint, Plaintiff names the following Defendants: the State of Florida; the Child Support Enforcement Division (CSE) of the Florida Department of Revenue; all hearing officers presiding over child support enforcement matters; Walter Steigleman, an attorney for CSE; and Michelle Ekenskin, an employee of CSE (Doc. 1 at 1, 2). Plaintiff alleges that he has been ordered to pay child support for four children (*id.* at 3). He states that CSE garnished $39.00 from his bank account, required him to pay $150.00 to regain his driver's license, required him to pay a $1,070.00 purge to get out of jail, intercepted his $1,233.00 federal tax refund, and has been deducting $170.00 per week from his paycheck, when they were supposed to collect only $100.00 per week (*id.*). Plaintiff states that Michelle Ekenskin garnished his bank account and made him pay the purge amount even though she is not an attorney (*id.*). Plaintiff also states he requested that CSE enforce a "default order" against the mothers of his children for failing to comply with the child visitation provisions of the order establishing custody and visitation, but Mr. Steiglemen advised him that CSE enforces only the child support provisions of such orders (*id.*). Plaintiff claims that Defendants' conduct violated the Sixth, Seventh, and Fourteenth Amendments (*id.* at 4). As relief,

Plaintiff seeks an injunction enjoining CSE hearing officers from violating the law and an injunction withholding federal funding from CSE until it complies with the law (*id.*).  He also seeks an order granting him custody of this children, as well as $100,000.00 in monetary damages (*id.*).

Since Plaintiff is proceeding in forma pauperis, the court may dismiss the case if satisfied that the action is "(i) frivolous or malicious;  (ii) fails to state a claim on which relief may be granted;  or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C.A.  § 1915(e)(2)(B).  A complaint is frivolous under section 1915(e) "where it lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325, 109 S. Ct. 1827, 1833, 104 L. Ed. 2d 338 (1989).  Dismissals on this ground should only be ordered when the legal theories are "indisputably meritless," *id.*, 490 U.S. at 327, or when the claims rely on factual allegations that are "clearly baseless."  Denton v. Hernandez, 504 U.S. 25, 31, 112 S. Ct. 1728, 1733, 118 L. Ed. 2d 340 (1992).  Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6).  Mitchell v. Farcass, 112 F.3d 1483, 1485 (11th Cir. 1997).  The allegations of the complaint are taken as true and are construed in the light most favorable to the plaintiff.  Davis v. Monroe County Bd. Of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997). The complaint may be dismissed only if it appears beyond doubt that Plaintiff can prove no set of facts that would entitle him to relief.  Brown v. Budget Rent-A-Car Sys., Inc., 119 F.3d 922, 923 (11th Cir. 1997).

It is well recognized that in any section 1983 action, the initial inquiry must focus on whether two essential elements are present:

> 1. whether the conduct complained of was committed by a person acting under color of state law; and
>
> 2. whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.

Parratt v. Taylor, 451 U.S. 527, 535, 101 S. Ct. 1908, 1912, 68 L. Ed. 2d 420, 428 (1981), *overruled on other grounds*, Daniels v. Williams, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986); Duke v. Cleland, 5 F.3d 1399, 1403 (11th Cir. 1993) (citing Parratt).  A state is not a person within the meaning of 42 U.S.C. § 1983.  Will v. Michigan Dep't. of State Police, 491 U.S. 58, 64, 109 S. Ct.

2304, 2308, 105 L. Ed. 2d 45 (1989).  Therefore, Plaintiff's claims against the State of Florida should be dismissed.

Additionally, to the extent Plaintiff seeks review of the child custody order(s) and orders entered in the child support enforcement proceedings, this court does not have jurisdiction to review his claims.  It is well established that federal district courts exercise only original jurisdiction; they lack appellate jurisdiction to review state court decisions reached in administrative and judicial proceedings.  District of Columbia Ct. of Appeals v. Feldman, 460 U.S. 462, 476, 103 S. Ct. 1303, 1311–12, 75 L. Ed. 2d 206 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415–16, 44 S. Ct. 149, 150, 68 L. Ed. 362 (1923).  The Rooker and Feldman decisions have become known as the Rooker-Feldman doctrine.  "The Rooker-Feldman doctrine places limits on the subject-matter jurisdiction of federal district courts and courts of appeal over certain matters related to previous state court litigation.  Goodman v. Sipos, 259 F.3d 1327, 1332 (11th Cir. 2002).  Under this doctrine, "federal courts, other than the . . . Supreme Court, have no authority to review the final judgments of state courts," which "extends not only to constitutional claims presented or adjudicated by a state court, but also to claims that are 'inextricably intertwined' with a state court judgment." *Id.* (citation and quotations omitted).  "A federal claim is inextricably intertwined with a state court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Id.* (citation and quotations omitted).  Nevertheless, "even if a claim is 'inextricably intertwined' with the state court's judgment, the doctrine does not apply if the plaintiff had no 'reasonable opportunity to raise his federal claim in state proceedings.'" *Id.* (citation and quotations omitted).

In Staley v. Ledbetter, the Eleventh Circuit held that the Rooker-Feldman doctrine deprived the district court of jurisdiction over a plaintiff's section 1983 claim in which she requested "reinstatement of parental custody and psychiatric care at state expense for her children and herself" based on alleged violation of the Equal Protection and Due Process Clauses.  837 F.2d 1016, 1017 (11th Cir. 1988).  The Circuit Court stated that the plaintiff "in essence sought to reverse a state court's child custody determination" and held that:

> [N]o federal subject matter jurisdiction existed in this case.  In effect, Staley seeks to challenge collaterally the state agency and court proceedings that terminated her parental rights.  The federal courts are not a forum for appealing state court decisions.

*Id.* at 1017–18.

Proper application of the Rooker-Feldman doctrine was very recently clarified by the United States Supreme Court.  The Court stated:

> The Rooker-Feldman doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name:  cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.

Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 125 S. Ct. 1517, 1521–22, 161 L. Ed. 2d 454 (2005) (holding that the doctrine did not apply because the federal suit was filed before the state court judgments were rendered).

In the instant case, Plaintiff was the state court "loser"; he is complaining of injuries caused by state court judgments; the state court judgments were rendered prior to commencement of the instant civil rights action; and Plaintiff invites district court review and rejection of those state court judgments.  Additionally, Plaintiff had a reasonable opportunity to raise his constitutional claims in the state courts.  Thus, Plaintiff's challenge to the final state court judgment must be dismissed for lack of jurisdiction under the Rooker-Feldman doctrine.  *See* Gogola v. Zingale, 141 Fed. Appx. 839, 2005 WL 1669606 (11th Cir. 2005) (unpublished) (applying  Rooker-Feldman doctrine to claims against Executive Director of Florida Department of Revenue and Florida Department of Revenue challenging Florida's alimony provisions as unconstitutional).

Additionally, Plaintiff's claims against the CSE and its hearing officers for prospective injunctive relief in the form of "stop[ping] child support enforcement hearing officer[s] from violating Art. V and withhold[ing] all federal funding until they become [sic] in compliance with federal law" (*see* Doc. 1 at 4) are subject to abstention under Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971).  In Younger, the Supreme Court "reaffirmed the 'basic doctrine of equity jurisprudence that courts of equity should not act . . . when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief.'"  O'Shea v. Littleton, 414 U.S. 488, 499, 94 S. Ct. 669, 677–78, 38 L. Ed. 2d 674 (1974) (quoting Younger, 401 U.S. at 43–44).  The Younger abstention doctrine derives from "the vital consideration of comity between the state and national governments," Luckey v. Miller, 976 F.2d 673, 676 (11th

Cir.1992) ("Luckey V"), which Younger itself described as a "sensitivity to the legitimate interests of both State and National Governments," Younger, 401 U.S. at 44.

Since Younger, the Supreme Court and the Eleventh Circuit have applied and expanded upon the abstention doctrine. In O'Shea v. Littleton, the Supreme Court, in an alternative holding, held that the district court had properly declined to provide equitable relief to plaintiffs who sought an injunction against various state officials, including state judges. 414 U.S. at 499. The plaintiffs had alleged that the state judges had unconstitutionally: (1) set bond in criminal cases without regard to the facts of a case; (2) set sentences higher and imposed harsher conditions on black persons than white persons; and (3) required black persons, when charged with violations of city ordinances that carry fines and possible jail sentences if the fines cannot be paid, to pay for a trial by jury. *Id.* at 492. The plaintiffs requested that the federal district court enjoin those practices, and the district court declined to do so. *Id.* In holding that the district court had properly declined to enjoin those practices, the Supreme Court stated that "'the principles of equity, comity, and federalism . . . must restrain a federal court when asked to enjoin a state court proceeding.'" *Id.* at 499 (quoting Mitchum v. Foster, 407 U.S. 225, 243, 92 S. Ct. 2151, 2162, 32 L. Ed. 2d 705 (1972)); *see also* Growe v. Emison, 507 U.S. 25, 32, 113 S. Ct. 1075, 1080, 122 L. Ed. 2d 388 (1993) (stating that "principles of federalism and comity" must underlie the discretion of courts of equity). The Supreme Court emphasized:

> An injunction of the type contemplated by respondents . . . would disrupt the normal course of proceedings in the state courts via resort to the federal suit for determination of the claim ab initio, just as would the request for injunctive relief from an ongoing state prosecution against the federal plaintiff which was found to be unwarranted in Younger.

O'Shea, 414 U.S. at 501. The Court held that "the 'periodic reporting' system [that] . . . might be warranted would constitute a form of monitoring of the operation of state court functions that is antipathetic to established principles of comity." *Id.* at 501(footnote omitted).

Relying on both Younger and O'Shea, the Eleventh Circuit held in Pompey v. Broward County, that abstention was proper in a § 1983 action challenging the constitutionality of contempt hearings in child support enforcement proceedings on Sixth and Fourteenth Amendment grounds. 95 F.3d 1543, 1545 (11th Cir. 1996). The plaintiff were five fathers who already had been, and who

alleged that they were also likely in the future to be, ordered incarcerated by the Broward County Circuit Court for failure to pay child support. *Id.* at 1544. They brought a § 1983 suit against the Broward County Support Enforcement Division, Broward County, its administrator, the director of the Support Division, and the family division judges of the Broward County Circuit Court. *Id.* The plaintiffs claimed that the defendants' practices during "Daddy Roundups" were unconstitutional because: (1) the court failed to inform them of their right to court-appointed counsel, and to appoint such counsel for indigent fathers, and (2) the court failed to provide them with due process at their civil contempt hearings by relying on faulty and insufficient evidence with regard to the amount in arrears, spending insufficient amounts of time on each case, and failing to keep records of each hearing. *Id.* at 1544–55. The plaintiffs sought various forms of injunctive relief and damages. *Id.* After noting several problems that would arise "if the federal district court were to arrogate to itself the role of overseer of Broward County's child support enforcement proceedings," *Id.* at 1549–50 (internal quotation omitted), the Eleventh Circuit affirmed the denial of the plaintiffs' claims for equitable relief against the defendant judges on abstention grounds, and held that the plaintiffs' claims for equitable relief against the Support Division were also due to be dismissed on Younger abstention grounds. *Id.* at 1551–52 and n.14.

Based upon the reasoning of Pompey, the undersigned concludes that Plaintiff's claims for equitable relief against CSE and the hearing officers should be dismissed.

To the extent Plaintiff seeks monetary relief against the CSE, a division of the Florida Department of Revenue, his claim is barred by the Eleventh Amendment. The Eleventh Amendment is an absolute bar to suit for monetary damages by an individual against a state or its agencies, or against officers or employees of the state or its agencies in their official capacities. Edelman v. Jordan, 415 U.S. 651, 662–63, 94 S. Ct. 1347, 1355–56, 39 L. Ed. 2d 662 (1974). Absent waiver or express congressional abrogation, neither of which is present in this case, the Eleventh Amendment prohibits Plaintiff's suit against the state agency in federal court. Kentucky v. Graham, 473 U.S. 159, 167 n. 14, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985); Harden v. Adams, 760 F.2d 1158, 1163–64 (11th Cir. 1985) (holding that Eleventh Amendment bars suit against Troy State University because it is an agency and instrumentality of the state under Alabama law). Therefore, to the extent Plaintiff seeks monetary damages against CSE, his claims are barred by the Eleventh Amendment.

Additionally, to the extent Plaintiff seeks monetary damages against the hearing officers, it is well established that Plaintiff may not maintain a suit for damages against the hearing officers because judges acting in their judicial capacity are absolutely immune from damages suits. Mireles v. Waco, 502 U.S. 9, 11, 112 S. Ct. 286, 288, 116 L. Ed. 2d 9 (1991) ("Judicial immunity is an immunity from suit, not just from ultimate assessment of damages.") (citing Mitchell v. Forsyth, 472 U.S. 511, 526–27, 105 S. Ct. 2806, 2815–16, 86 L. Ed. 2d 411 (1985)); Dennis v. Sparks, 449 U.S. 24, 27, 101 S. Ct. 183, 186, 66 L. Ed. 2d 185 (1980); *see also* Sun v. Forrester, 939 F.2d 924, 925–26 (11th Cir. 1991). Immunity may be overcome only: (1) where the judge has not acted within his judicial capacity, or (2) where the judge's actions, though judicial in nature, are taken in the complete absence of all jurisdiction. Stump v. Sparkman, 435 U.S. 349, 356–357, 98 S. Ct. 1099, 1104–05, 55 L. Ed. 2d 331 (1978); Mireles, 502 U.S. at 11; Forrester v. White, 484 U.S. 219, 227, 108 S. Ct. 538, 544, 98 L. Ed. 2d 555 (1988).

Whether an act by a judge is a 'judicial' one relates "to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." Mireles, 502 U.S. at 11 (citing Stump, 435 U.S. at 362); *see also* Simmons v. Conger, 86 F.3d 1080, 1085 (11th Cir. 1996). The relevant inquiry is the "nature" and "function" of the act, not the "act itself." Mireles, 502 U.S. at 13 (citing Stump, 435 U.S. at 362). In other words, the court must look to the particular act's relation to a general function normally performed by a judge.

A judge is not deprived of absolute immunity from liability for damages because an action he took was in error, was illegal, was done maliciously, or was in excess of his authority. Stump, 435 U.S. at 355–57; *see also* Mireles, 502 U.S. at 11 (judicial immunity is not overcome by allegations of bad faith or malice). Rather, a judge is subject to liability only when he acted in clear absence of all jurisdiction, and knew or must have known that he was acting in such a manner. Simmons, 86 F.3d at 1084–85 (citing Stump, 435 U.S. at 356–57). An act is done in "clear absence of all jurisdiction," for judicial immunity purposes, if the matter upon which the judge acted is clearly outside the subject matter jurisdiction of the court over which he presides. Dykes, 776 F.2d at 946-47 (citations omitted). The term "jurisdiction," as it applies to judicial immunity, means the "judicial power to hear and determine a matter, not the manner, method, or correctness of the

exercise of that power." 48A C.J.S. Judges § 86. Furthermore, for the purposes of immunity, a judge's jurisdiction is construed broadly. Stump, 435 U.S. at 357. Thus, where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes. Harper v. Merckle, 638 F.2d 848 (5th Cir. 1981) (judicial immunity extends to all judicial acts provided they do not fall clearly outside the judge's subject matter jurisdiction). The proper inquiry for determining judicial immunity is not whether the judge actually had jurisdiction, or even whether the judge exceeded his jurisdictional authority, but whether the challenged actions were obviously taken outside the scope of the judge's power. Stump, 435 U.S. at 357 (quotation omitted). The Eleventh Circuit held that the doctrine of judicial immunity applies to state administrative law judges. Smith v. Shook, 237 F.3d 1322, 1325 (11th Cir. 2001).

Turning to the instant case, it is clear from Florida law that administrative hearings in child support enforcement proceedings are conducted by state administrative law judges. *See* Fla. Stat. § 409.2563. Additionally, the conduct of which Plaintiff complains, namely, issuing writs of garnishment, income deduction orders, orders authorizing interception of federal tax refunds, and orders finding him in contempt and setting purge amounts, are functions normally performed by a judge. Furthermore, as Plaintiff was a party in the case over which the hearing officers presided, he dealt with them in their judicial capacities. Moreover, Plaintiff does not allege, nor do the facts suggest, that the hearing officers acted in the complete absence of all jurisdiction. Therefore, Plaintiff's claims for monetary damages against the hearing officers is barred.

Finally, Plaintiff has failed to state a claim for relief against Defendants Steigleman and Ekenskin. To the extent Plaintiff claims that Attorney Steigleman refused to assist him in enforcing the child visitation provisions of a state court order, Plaintiff cannot state a viable claim as the Constitution does not guarantee persons the right to counsel in modification or enforcement proceedings involving child custody and visitation. Furthermore, to the extent Plaintiff claims that Defendant Ekenskin's involvement in the garnishment of his bank account and establishment of the purge amount constituted the unauthorized practice of law, this conduct is not prohibited by the Constitution; rather, it is a matter properly dealt with by the state bar. Accordingly, Plaintiff's claims against Defendants Steigleman and Ekenskin should be dismissed for failure to state a claim.

Case No: 3:06cv565/MCR/EMT

Accordingly, it is **ORDERED**:

Plaintiff's motion to proceed in forma pauperis (Doc. 2) is **GRANTED**.

And it is respectfully **RECOMMENDED**:

1. That Plaintiff's claims against the State of Florida be **DISMISSED** for lack of jurisdiction.

2. That Plaintiff's claims for equitable relief against the Child Support Enforcement Division of the Florida Department of Revenue and all hearing officers presiding over child support enforcement matters be **DISMISSED** with prejudice on Younger abstention grounds.

3. That Plaintiff's claims for monetary relief against the Child Support Enforcement Division of the Florida Department of Revenue be **DISMISSED** on the basis of Eleventh Amendment immunity, pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii).

4. That Plaintiff's claims for monetary relief against hearing officers presiding over child support enforcement matters involving him be **DISMISSED** with prejudice on the basis of judicial immunity, pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii).

5. That Plaintiff's claims against Walter Steigleman and Michelle Ekenskin be **DISMISSED** with prejudice for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

At Pensacola, Florida this 6th day of February 2007.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Any objections to these proposed findings and recommendations must be filed within ten (10) days after being served a copy hereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings.** See **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**